Citation Nr: 1607933 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 09-20 773 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Detroit, Michigan


THE ISSUES

1. Entitlement to a compensable initial disability rating for plantar fasciitis of the right lower extremity prior to July 11, 2013, and in excess of 10 percent thereafter. 

2. Entitlement to a compensable initial disability rating for plantar fasciitis of the left lower extremity prior to July 11, 2013, and in excess of 10 percent thereafter. 

3. Entitlement to a compensable initial disability rating for patellofemoral syndrome of the right knee. 

4. Entitlement to a compensable initial disability rating for patellofemoral syndrome of the left knee. 

5. Entitlement to a compensable initial disability rating for a right (major) shoulder disability prior to July 26, 2011, and in excess of 20 percent thereafter. 

6. Entitlement to a compensable initial disability rating for a left (minor) shoulder disability prior to July 26, 2011, and in excess of 20 percent thereafter. 


REPRESENTATION

Appellant represented by: The American Legion


ATTORNEY FOR THE BOARD

D. Chad Johnson, Associate Counsel


INTRODUCTION

The Veteran served on active duty from November 1984 to November 1988 and from August 2006 to October 2007. 

These matters come before the Board of Veterans' Appeals (Board) from an August 2008 decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Detroit, Michigan. 

During the pendency of the appeal, an October 2012 rating decision granted an increased 20 percent disability rating for the Veteran's bilateral shoulder disability, effective July 26, 2011. Additionally, an October 2015 rating decision granted an increased 10 percent disability rating for the Veteran's bilateral plantar fasciitis, effective July 11, 2013. However, as these grants do not represent total grants of the benefits sought on appeal, the claims for increased disability ratings for a bilateral shoulder disability and bilateral plantar fasciitis remain before the Board. See AB v. Brown, 6 Vet. App. 35, 38 (1993). 

These matters were previously remanded by the Board in May 2011 and February 2015 in order to obtain outstanding VA treatment records and to afford the Veteran current VA examinations. As discussed below, the Board finds there has been substantial compliance with prior remand directives, such that an additional remand is not required. See Stegall v. West, 11 Vet. App. 268 (1998) (holding that a remand by the Court or the Board confers the right to compliance with remand orders); see Dyment v. West, 13 Vet. App. 141 (1999) (holding that remand not required under Stegall where there was substantial compliance with remand directives). 


FINDINGS OF FACT

1. For the entire period on appeal, the Veteran's plantar fasciitis of the right lower extremity has been manifested by pain with manipulation and use of the feet, despite the use of orthotics and other treatment, and most nearly approximates a moderate level of disability the feet for the entire period on appeal. 

2. For the entire period on appeal, the Veteran's plantar fasciitis of the left lower extremity has been manifested by pain with manipulation and use of the feet, despite the use of orthotics and other treatment, and most nearly approximates a moderate level of disability of the feet for the entire period on appeal. 

3. For the entire period on appeal, the Veteran's patellofemoral syndrome of the right knee has been manifested by painful noncompensable limitation of motion. 

4. For the entire period on appeal, the Veteran's patellofemoral syndrome of the left knee has been manifested by painful noncompensable limitation of motion. 

5. Prior to July 26, 2011, the Veteran's bilateral shoulder disability was manifested by pain, objective noncompensable limited range of motion of the arm, and x-ray evidence of degenerative changes of the shoulders, without ankylosis or other impairment of the humerus, clavicle, or scapula. 

6. From July 26, 2011, the Veteran's bilateral shoulder disability has been manifested by pain and objective limited range of motion of the arm at shoulder level, without ankylosis or other impairment of the humerus, clavicle, or scapula. 



CONCLUSIONS OF LAW

1. The criteria for a 10 percent disability rating for bilateral plantar fasciitis, but no higher, have been met for the entire period on appeal. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code (DC) 5276 (2015). 

2. The criteria for a 10 percent disability rating for patellofemoral syndrome of the right knee have been met for the entire period on appeal. 38 U.S.C.A. § 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, DC 5261 (2015); Mitchell v. Shinseki, 25 Vet. App. 32 (2011). 

3. The criteria for a 10 percent disability rating for patellofemoral syndrome of the left knee have been met for the entire period on appeal. 38 U.S.C.A. § 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, DC 5261 (2015); Mitchell v. Shinseki, 25 Vet. App. 32 (2011). 

4. The criteria for a 10 percent initial disability rating for a right (major) shoulder disability have been met prior to July 26, 2011; however, an increased disability rating in excess of 20 percent thereafter have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, DCs 5003, 5024, 5261 (2015). 

5. The criteria for a 10 percent initial disability rating for a left (minor) shoulder disability have been met prior to July 26, 2011; however, an increased disability rating in excess of 20 percent thereafter have not been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 4.1, 4.2, 4.3, 4.7, 4.10, 4.40, 4.45, 4.59, 4.71a, DCs 5003, 5024, 5261 (2015). 



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Due Process

VA has duties to notify and assist claimants in substantiating a claim for VA benefits. See, e.g., 38 U.S.C.A. §§ 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2015). The Veteran's increased rating claims on appeal arise from his disagreement with the initial disability ratings assigned following the grants of service connection. Once an underlying claim, such as service connection, is granted, the claim is substantiated; therefore, additional notice is not required and any defect in the notice is not prejudicial. See Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007). Therefore, no further notice regarding his increased rating claims is required. 

Regarding the duty to assist, the RO has obtained and associated with the claims file the Veteran's VA treatment records, including VA examination reports, and lay statements. 

The Veteran was provided with relevant VA examinations in March 2008, July 2011, July 2013, and September 2015. The July 2011 and September 2015 VA examinations were provided as directed within the May 2011 and February 2015 Board remands, after which the RO also obtained additional VA treatment records. The VA examination reports include all relevant findings and medical opinions needed to evaluate the Veteran's increased rating claim on appeal. The VA examiners considered pertinent evidence of record, including the Veteran's medical history, interviewed the Veteran, and conducted thorough clinical examinations. The examination reports set forth detailed examination findings in a manner that allows for informed appellate review under applicable VA laws and regulations, and the examiners offered the necessary findings to apply the rating criteria. For these reasons, the Board finds that the VA examinations and opinions of record are adequate for deciding the Veteran's claims on appeal. See Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007) (holding an examination is considered adequate when it is based on consideration of the prior medical history and examinations, and also describes the disability in sufficient detail so that the Board's evaluation of the disability will be a fully informed one). Additionally, given the development discussed, the Board finds there has been substantial compliance with prior Board remand directives, such that further remand is not required. See Stegall, 11 Vet. App. 268; see also Dyment, 13 Vet. App. 141. 

Neither the Veteran nor his representative has identified any additional evidence relevant to the claims on appeal which has not been obtained. Hence, no further notice or assistance is required to fulfill VA's duty to assist the Veteran and the Board will proceed with its adjudication. 


II. Increased Ratings - Musculoskeletal, Generally 

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. § 4.1 (2015). The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10 (2015). 

In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the Veteran's disability. 38 C.F.R. § 4.1, 4.2 (2015); Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991). If the disability more closely approximates the criteria for the higher of two ratings, the higher rating will be assigned; otherwise, the lower rating is assigned. 38 C.F.R. § 4.7 (2015). When after careful consideration of all procurable and assembled data, a reasonable doubt arises regarding the degree of disability such doubt will be resolved in favor of the claimant. 38 C.F.R. § 4.3 (2015). 

Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27 (2015). 

Whether the issue is one of an initial rating or an increased rating, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as "staged" ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007). The relevant temporal focus for adjudicating an increased rating claim is on the evidence concerning the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim. See id. Concerning initial disability ratings, VA must consider the severity of disability for which the veteran is eligible for service connection starting on the date the application was filed. See id. ; cf. Moore v. Nicholson, 21 Vet. App. 211, 216-17 (2007). Herein, the Board has considered the appropriateness of any assigned rating periods, as well as whether any additional staged rating periods are warranted. 

The evaluation of the same disability under several diagnostic codes, known as pyramiding, must be avoided. 38 C.F.R. § 4.14 (2015). Separate ratings may be assigned for distinct disabilities resulting from the same injury so long as the symptomatology for one condition is not duplicative of or overlapping with the symptomatology of the other condition. Id. 

In every instance where the schedule does not provide a zero percent evaluation for a diagnostic code, a zero percent evaluation shall be assigned when the requirements for a compensable evaluation are not met. 38 C.F.R. § 4.31 (2015). 

Disability of the musculoskeletal system is primarily the inability, due to damage or infection in parts of the system, to perform the normal working movements of the body with normal excursion, strength, speed, coordination, and endurance. It is essential that the examination upon which ratings are based adequately portray the anatomical damage, and the functional loss, with respect to all these elements. The functional loss may be due to absence of part, or all, of the necessary bones, joints and muscles, or associated structures, or to deformity, adhesions, defective innervations, or other pathology, or it may be due to pain, supported by adequate pathology and evidenced by the visible behavior of the claimant undertaking the motion. Weakness is as important as limitation of motion, and a part that becomes painful on use must be regarded as seriously disabled. A little used part of the musculoskeletal system may be expected to show evidence of disuse, either through atrophy, the condition of the skin, absence of normal callosity or the like. 38 C.F.R. § 4.40 (2015). 

Evidence of pain, weakened movement, excess fatigability, or incoordination must be considered in determining the level of associated functional loss, taking into account any part of the musculoskeletal system that becomes painful on use. DeLuca v. Brown, 8 Vet. App. 202 (1995). The provisions regarding the avoidance of pyramiding do not forbid consideration of a higher rating based on greater limitation of motion due to pain on use, including flare ups. However, those provisions should only be considered in conjunction with the diagnostic codes predicated on limitation of motion. 38 C.F.R. §§ 4.40, 4.45 (2015). 

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. Painful motion is an important factor of joint disability which is entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59 (2015). However, the evaluation of painful motion as limited motion only applies when the limitation of motion is noncompensable under the applicable diagnostic code. Mitchell v. Shinseki, 25 Vet. App. 32 (2011). 

With respect to the joints, the factors of disability reside in reductions of their normal excursion of movements in different planes. Inquiry will be directed to these considerations: (a) less movement than normal (due to ankylosis, limitation or blocking, adhesions, tendon-tie-up, contracted scars, etc.); (b) more movement than normal (from flail joint, resections, nonunion of fracture, relaxation of ligaments, etc.); (c) weakened movement (due to muscle injury, disease or injury of peripheral nerves, divided or lengthened tendons, etc.); (d) excess fatigability; (e) incoordination, impaired ability to execute skilled movements smoothly; and (f) pain on movement, swelling, deformity or atrophy of disuse. Instability of station, disturbance of locomotion, interference with sitting, standing and weight-bearing are related considerations. For the purpose of rating disability from arthritis, the knee and shoulder are each considered one major joint. 38 C.F.R. § 4.45. 


II.A. Increased Ratings - Bilateral Plantar Fasciitis

The Veteran's plantar fasciitis of the bilateral lower extremities is rated as noncompensable prior to July 11, 2013 under DC 5099-5020, and as 10 percent disabling from July 11, 2013 under DC 5276. 38 C.F.R. § 4.71a, DCs 5020, 5276 (2015). 

The Board notes that the rating schedule cannot account for every disease; therefore, it is permissible to rate unlisted conditions by analogy. See 38 C.F.R. § 4.20 (2015). Such ratings are to be "built-up" by selecting the first two digits from that part of the schedule most closely identifying the part of the body involved, and the last two digits 99, indicating an unlisted condition. 38 C.F.R. § 4.27 (2015). Further, hyphenated diagnostic codes may be used when a rating is determined on the basis of a residual condition. Id. Therefore, DC 5099-5020 indicates an unlisted musculoskeletal condition rated as synovitis. 38 C.F.R. § 4.71a, DC 5020 (2015). 

Certain conditions, including synovitis, are to be rated on limitation of motion of affected parts as degenerative arthritis under DC 5003. 38 C.F.R. § 4.71a, DCs 5013-24 (2015). Pursuant to DC 5003, arthritis shown by X-ray studies is rated based on limitation of motion of the affected joint. When limitation of motion would be noncompensable under a limitation of motion code, but there is at least some limitation of motion, a 10 percent rating may be assigned for each major joint so affected. 38 C.F.R. § 4.71a, DCs 5003, 5010 (2015). The criteria for the evaluation of traumatic arthritis direct that the evaluation be conducted under DC 5003, which states that degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a, DC 5003, 5010. When, however, the limitation of motion is noncompensable under the appropriate diagnostic codes, a rating of 10 percent may be applied to each such major joint or group of minor joints affected by limitation of motion. The limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a, DC 5003. In the absence of limitation of motion, X-ray evidence of arthritis involving two or more major joints or two or more minor joint groups, will warrant a rating of 10 percent; in the absence of limitation of motion, X-ray evidence of arthritis involving two or more major joint groups with occasional incapacitating exacerbations will warrant a 20 percent rating. The above ratings are to be combined, not added under DC 5003. 38 C.F.R. § 4.71a, DC 5010, Note 1. 

Under DC 5276, a noncompensable rating is assigned where bilateral flatfoot is mild, with symptoms relieved by built-up shoe or arch support. 38 C.F.R. § 4.71a, DC 5276. A 10 percent rating is assigned for moderate bilateral flatfoot, with weight-bearing line over or medial to the great toe, inward bowing of the tendo achillis, or pain on manipulation and use of the feet, either bilateral or unilateral. Id. A 30 percent rating is assigned for severe bilateral flatfoot with objective evidence of marked deformity (pronation, abduction, etc.), pain on manipulation and use accentuated, indication of swelling on use, or characteristic callosities. Id. Finally, a 50 percent rating is assigned for bilateral pronounced flatfoot with marked pronation, extreme tenderness of plantar surfaces of the feet, marked inward displacement and severe spasm of the tendo achillis on manipulation, not improved by orthopedic shoes or appliances. Id. 

Turning to the evidence of record, a December 2007 statement of medical examination and duty status documents the Veteran's report of bilateral foot and arch pain. 

The Veteran was first afforded a VA examination regarding his bilateral foot disability in March 2008. He reported that he had ongoing foot pain in both soles of his feet which began in service and continued since discharge. He stated that he had been given special boots during active service, but denied current use of any orthotics or any other assistive devices. He stated that over the counter pain medications had provided some improvement and noted that he was able to do his routine daily activities and usual duties of his occupation. A physical examination revealed minimal low-arched feet bilaterally, with minimal tenderness also present bilaterally, especially over the ball of both great toes as well as midfoot areas and posterior part of the heels. There were no calluses, signs of cellulitis or inflammation, or fungal infections. Muscle strength was normal, with no obvious wasting or atrophy of the muscles of both feet. Dorsiflexion of both great toes and ankles was normal. There was no obvious swelling, tenderness, redness, warmness, or crepitus of the small joints of both feet, and the movements of the same joints were within normal limits and not painful. There was no tenderness of the Achilles tendon, and its alignment appeared to be normal. The Veteran was not wearing special orthotic shoes, inserts, braces, or splints on his feet. Weightbearing x-rays of both feet revealed no pes planus, with a very small calcaneal spur. The examiner diagnosed bilateral plantar fasciitis which was not likely preventing the Veteran from doing daily, routine activities and light-duty jobs. 

Subsequent VA treatment records from April 2008 document the Veteran's ongoing bilateral foot pain. Upon physical examination, his range of motion was intact. In May 2008, the Veteran underwent a VA physical therapy evaluation. He reported that the pain began in his left foot, and that it remained worse in his left foot more so than his right foot. He stated that his pain was worse in the morning, and he denied any stretching or icing for treatment. Upon examination, bilateral ankle range of motion was within normal limits upon dorsiflexion and plantarflexion, as was his bilateral foot and ankle strength. The recommendation was that the Veteran participate in a home exercise program. In July 2008, the Veteran complained of ongoing and unchanged pain due to his bilateral plantar fasciitis, which was greater on the left than the right, and treated with physical therapy and the use of orthotics. A review of systems revealed bilateral pain of the plantar surface, greater on the left than the right. 

In his June 2009 VA Form 9 substantive appeal, the Veteran reported that he had to quit his job at Ford because his feet would hurt after a couple hours. Prior to quitting his job, he would miss work because of foot pain, and he noted that he continued to experience extreme foot pain every morning upon waking. 

VA treatment records from July 2009 document the Veteran's ongoing bilateral plantar foot pain, which was worst upon waking and improved throughout the day. He reported some improvement with orthotics in the past. Upon physical examination, the Veteran had pain on palpation of the plantar surface bilaterally, without clubbing, cyanosis, or edema. There was no limitation of range of motion of the lower extremities and the Veteran was able to walk on his heels and toes without difficulty. The Veteran was then referred for orthotics and physical therapy for his bilateral plantar fasciitis. 

The Veteran was next afforded a VA foot examination in July 2011. He reported bilateral foot pain, mainly in the arches, which was worst in the morning and which affected his activities of daily living and his work. Reported treatment included arch supports and pain medication. He noted that repetitive motion increased the pain, without any additional loss of motion, and he denied a history of flare ups or surgery, although he stated his condition was worsening. Upon physical examination, both feet revealed a mild cavus deformity, without calluses, and neutral heels and Achilles tendons. There was tenderness along the plantar fascia including the heel areas, but no pain on manipulation of the forefoot or hindfoot. Ankle pulses were palpable. Diagnostic x-ray studies of both feet were normal, with mild cavus deformity. The VA examiner diagnosed bilateral plantar fasciitis with a mild cavus deformity bilaterally which resulted in a moderate degree of pain in each foot, without any visible functional impairment. The examiner noted there was no additional limitation of motion due to pain, fatigue, weakness, or lack of endurance on repetitive use, and concluded that overall there was minimal impairment of both feet. 

VA treatment records from January 2014 document the Veteran's ongoing reports of bilateral foot pain, treated with daily stretching and use of orthotics. He reported past podiatry treatment including steroid injections which helped to alleviate his pain for approximately four weeks. 

The Veteran was most recently afforded a VA foot examination in September 2015. He reported ongoing bilateral foot pain, mostly in the soles of his feet, but also over the heels, the big toe, and the mid-arch. The pain was increased with physical activities, such as prolonged standing more than one hour and walking more than half a mile. He denied any foot surgery or injections for pain but reported the use of arch supports and insole inserts as needed. He did not require the use of an assistive device such as a cane or walker, and was able to do routine, simple daily activities and the usual duties of his occupation. The examiner diagnosed mild bilateral plantar fasciitis with compromised weight bearing which required arch supports, custom orthotic inserts, or shoe modifications. The examiner noted that the Veteran's bilateral foot pain resulted in functional loss during flare ups or when the foot was used repeatedly over a period of time, and functional impact upon his ability to work, in that the Veteran's condition resulted in disturbance of locomotion and interference with standing. 

After a review of the record, including as discussed above, and after resolving any reasonable doubt in favor of the Veteran, the Board finds that a 10 percent disability rating for a moderate bilateral disability of the feet is warranted for the entire period on appeal. 

The Board acknowledges that the Veteran's bilateral foot condition was previously rated as noncompensable prior to July 13, 2011 under DC 5099-5020 for an unlisted musculoskeletal condition rated as synovitis. 38 C.F.R. § 4.71a, DC 5020. However, the Board finds that DC 5099-5020 does not reflect the totality of the Veteran's symptoms, which appear more closely analogous to the criteria set forth in DC 5276 pertaining to acquired flat foot (or pes planus). Indeed, the Veteran's bilateral foot disability is rated as 10 percent disabling under DC 5276 from July 13, 2011. Therefore, the Board finds has most appropriately considered the Veteran's bilateral plantar fasciitis by analogy under DC 5276 for the entire period on appeal, as the rating criteria therein more closely align with the affected body parts and the Veteran's demonstrated symptomatology. See 38 C.F.R. §§ 4.20, 4.71, DC 5276. 

The Board has also considered other potential diagnostic codes under which the Veteran's disability may be rated, including DCs 5277-5283 regarding other disabilities of the foot. However, such diagnostic codes are inapplicable here, as VA examination results reviewed herein do not show that the Veteran has any of the listed conditions; thus, they do not provide an avenue for a higher disability rating. See 38 C.F.R. § 4.71a , DCs 5277-5283 (2015). Finally, the Board has considered whether it would be appropriate to assign a higher rating under DC 5284, a general rating criteria for "other foot injuries." See id., DC 5284 (2015). The Board finds, however, that DC 5284 is not the most appropriate code to use as DC 5276 more closely approximates the anatomical location, symptomatology, and functions that are affected in the Veteran's specific case. See 38 C.F.R. §§ 4.20, 4.71, DC 5276. Therefore, the Board finds that the current 10 percent rating for bilateral plantar fasciitis is most accurately assigned under the specific provisions of DC 5276, rather than the more general Diagnostic Code 5284. In any event, based upon the evidence reviewed above, it does not appear that the Veteran has experienced at any time on appeal a moderately severe foot disability required under DC 5284 for an increased 20 percent disability rating. See id., DC 5284. 

In summary, the Board finds that the Veteran's bilateral plantar fasciitis meets the criteria for a 10 percent disability rating under DC 5276 for the entire period on appeal. On the other hand, the criteria for a disability rating in excess of 10 percent have not been met for any period on appeal. All possibly applicable diagnostic codes have been considered, and there is no basis to assign a higher rating. See Schafrath, 1 Vet. App. at 593. Although the Veteran's pain may have increased during the appeal, any increases in severity were not sufficient for a higher rating. The 10 percent rating assigned adequately compensates the Veteran for any functional loss due to pain and other factors. Neither the lay nor medical evidence documents functional loss due to pain greater than that contemplated by the assigned 10 percent disability rating for a moderate bilateral foot disability, even considering the extent of functional loss due to pain and other DeLuca factors. The preponderance of evidence weighs in favor of a 10 percent disability rating, but no higher, for bilateral plantar fasciitis for the entire period on appeal, and to that extent only, the claim is granted. See 38 U.S.C.A. § 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.3 (2014); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 



II.B. Increased Ratings - Bilateral Knees

The Veteran next seeks entitlement to compensable initial disability ratings for bilateral patellofemoral syndrome, current rated as noncompensable under DC 5261 for limitation of extension of the leg. See 38 C.F.R. § 4.71a, DC 5261 (2015). 

Under DC 5261, limitation of extension of the leg to 5 degrees warrants a noncompensable rating; limitation of extension to 10 degrees warrants a 10 percent disability rating; limitation of extension 15 degrees warrants a 20 percent disability rating; limitation of extension to 20 degrees warrants a 30 percent disability rating; limitation of extension to 30 degrees warrants a 40 percent disability rating; and limitation of extension to 45 degrees warrants a maximum schedular 50 percent disability rating. See 38 C.F.R. § 4.71a, DC 5261. 

With regards range of motion, for rating purposes, normal range of motion in a knee joint is from 0 to 140 degrees. Id, Plate II. 

The Veteran was first afforded a VA knees examination in March 2008. At that time, he reported bilateral knee pain almost daily for the past year. He denied any specific injury and noted that the pain occurred mostly after prolonged standing and walking, and was not related to weather. He denied swelling or locking of the joint, but noted frequent popping sensations and occasional feelings of giving way. He did not require the use of any assistive devices. Upon physical examination, there was no swelling, tenderness, redness, warmth, or crepitus of either knee joint. There was no joint effusion, genu varum or valgus deformity, and stability was normal. Range of motion of both knees was normal and not painful, even upon repetition; moreover, the examiner noted that the Veteran's knee function was not additionally limited by pain, weakness, fatigue, or lack of endurance after repetitive use. Muscle strength in the knees was normal, and there was no wasting or atrophy. X-rays of the knees showed patellofemoral syndrome involving both knee joints, but were negative for additional findings. Finally, the examiner concluded that the Veteran's bilateral knee condition was not likely to prevent him from doing his daily, routine activities and light-duty jobs. 

May 2008 VA treatment records contain a physical therapy evaluation wherein the Veteran reported that his pain began in his left foot and moved to his left knee. He reported increased pain within the past two weeks, including a constant nagging pain inferior to the patella. Upon physical examination, his knee range of motion included right knee extension to no worse than 0 degrees, with flexion to 128 degrees; left knee flexion was to no worse than 0 degrees, with extension to 130 degrees. The Veteran reported increased knee pain upon flexion and extension. The physical therapist noted the Veteran had minimally decreased bilateral knee extension. The Veteran was instructed in an exercise program and advised to follow up as needed. 

In July 2008, the Veteran reported unchanged bilateral knee pain. Upon a review of systems, his bilateral knee range of motion remained intact. 

In his June 2009 VA Form 9 substantive appeal, the Veteran reported that his knees always felt swollen, resulting in increased loss of motion and an inability to do physical activities for more than a short amount of time. 

VA treatment records from July 2009 document the Veteran's ongoing bilateral knee pain, which he described as dull and constant, without radiation, worse with activity and improved with rest. He denied any swelling, erythema, or warmth of the knee joints. Range of motion in the lower extremities was normal, without limitation. The physician noted that the etiology of his knee pain was unclear given a lack of inflammatory symptoms, and he did not suspect that it was secondary to a systemic process, such as rheumatoid arthritis. The Veteran was advised to lose weight loss, enrolled in the MOVE program, and referred for further physical therapy. 

The Veteran was afforded an additional VA knees examination in July 2011. He continued to complain of painful, aching knees with occasional weakness and resulting impaired mobility, although he stated that his activities of daily living and work were not affected. He denied a history of flare ups, any instability, or use of assistive devices. Upon physical examination, both knees were normally aligned, without any swelling. Patellar position was normal, with a slightly tender joint line, stable ligaments, and negative McMurray, Lachman, and drawer tests. Range of motion was normal (to 140 degrees) bilaterally, without any complaints. There was no additional limitation of motion due to pain, fatigue, weakness or lack of endurance on repetitive use. X-ray studies of the Veteran's knees were normal. The examiner diagnosed bilateral patellofemoral syndrome resulting in minimal impairment, without any evidence of subluxation or lateral instability of either knee, arthritis, or any significant limitation of motion. 

The Veteran was most recently afforded a VA knee examination in September 2015. He noted that he had continued to experience intermittent pain in both knee joints with functional impairment mostly related to activities like prolonged standing and walking. He denied any swelling of the joints, locking sensations, or use of assistive devices, but reported frequent popping sensations and occasional giving out sensations. He reported prior physical therapy the prior year ago for a couple of months and denied any flare ups. Upon physical examination, his range of motion bilaterally was normal without pain or evidence of localized tenderness. There was noted objective evidence of crepitus. The examiner noted that the examination was medically consistent with the Veteran's statements describing functional loss with repetitive use over time, in that pain limited his functional ability with repeated use over a period of time; however, there were no additional contributing factors of disability. Muscle strength was normal, without any ankylosis. There was no history of recurrent subluxation, lateral instability, or recurrent effusion. There was also no tibial or fibular impairment, no meniscal conditions, and no other pertinent physical findings. Diagnostic testing did not reveal arthritis or any other significant findings. The examiner concluded that the Veteran's diagnosed bilateral patellofemoral pain syndrome resulted in no significant effects on his usual occupation, with mild to moderate effects on his usual daily activities. 

Given the evidence of record, and as discussed below, after resolved any reasonable doubt in favor of the Veteran, the Board finds that 10 percent disability ratings for the Veteran's bilateral patellofemoral syndrome are warranted for the entire period on appeal. 

In order to warrant a compensable rating under DC 5261, the Veteran's knee condition must result in limitation of extension to 10 degrees. However, as shown upon multiple VA examinations, his range of extension has not been so limited. Similarly, in order to warrant a compensable disability rating under DC 5260, his flexion must be limited to 45 degrees; however, as discussed, flexion has not been so limited at any period on appeal. Therefore, compensable disability ratings are not warranted under DCs 5260-61 for limitation of range of motion. See 38 C.F.R. § 4.71a, DC 5260-61. 

The Board has also considered whether an increased disability rating is warranted under alternate diagnostic codes regarding disabilities of the knee. A compensable rating is not warranted based upon DC 5257 for recurrent subluxation or lateral instability, as there was no recurrent subluxation noted upon VA examinations during the appeal period. Id., DC 5257. Under DC 5258, a 20 percent disability rating is warranted when there is dislocation of the semilunar cartilage (meniscus) with frequent episodes of locking, pain, and effusion into the joint. Id., DC 5258. As these criteria are written in the conjunctive, all three elements must be met. See Melson v. Derwinski, 1 Vet. App. 334 (1991) (use of the conjunctive "and" in a statutory provision meant that all of the conditions listed in the provision must be met); compare Johnson v. Brown, 7 Vet. App. 95 (1994) (only one disjunctive "or" requirement must be met in order for an increased rating to be assigned). The Board notes that while the Veteran has reported individual symptoms, such as pain, crepitus, and giving way, the evidence of record does not document any episodes of locking or effusion in his knees. Therefore, an increased disability rating is not warranted under DC 5258. Finally, the record does not suggest that the Veteran has ankylosis, symptomatic removal of semilunar cartilage, current impairment of the tibia and fibula, or genu recurvatum, therefore DCs 5256, 5259, 5262, and 5263 are not for application. Id., DCs 5256, 5259, 5262, 5263. 

However, the Board is mindful that the Veteran has consistently reported ongoing knee pain. While the medical evidence is inconsistent as to whether he displayed objective evidence of pain upon movement during physical examination, the Board resolved any reasonable doubt in favor of the Veteran and finds that his bilateral patellofemoral syndrome has resulted in noncompensable painful motion throughout the appeal period. As noted above, the intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability, and painful motion is an important factor of joint disability which is entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59. The evaluation of painful motion as limited motion is applicable where, as here, the limitation of motion is noncompensable under the applicable diagnostic code. Mitchell, 25 Vet. App. 32 (2011). 

As such, after resolving any reasonable doubt in favor of the Veteran, the preponderance of evidence of record weighs in favor of increased 10 percent disability ratings for his bilateral patellofemoral syndrome for the entire period on appeal, but no higher; to that extent only, the claims are granted. See 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3; Gilbert, 1 Vet. App. 49. 


II.C. Increased Ratings - Bilateral Shoulders

Finally, the Veteran seeks increased disability ratings for bilateral shoulder disabilities, currently rated as noncompensable prior to July 26, 2011 under DC 5024, and as 20 percent disabling thereafter under DC 5003-5201. See 38 C.F.R. § 4.71a, DCs 5003, 5024, 5201 (2015). 

Certain conditions, including tenosynovitis, are to be rated on limitation of motion of the affected parts as degenerative arthritis under DC 5003. 38 C.F.R. § 4.71a, DCs 5024 (2015). Pursuant to DC 5003, arthritis shown by X-ray studies is rated based on limitation of motion of the affected joint. When limitation of motion would be noncompensable under a limitation of motion code, but there is at least some limitation of motion, a 10 percent rating may be assigned for each major joint so affected. 38 C.F.R. § 4.71a, DC 5003. The criteria for the evaluation of traumatic arthritis direct that the evaluation be conducted under DC 5003, which states that degenerative arthritis established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved. 38 C.F.R. § 4.71a, DC 5003, 5010. When, however, the limitation of motion is noncompensable under the appropriate diagnostic codes, a rating of 10 percent may be applied to each such major joint or group of minor joints affected by limitation of motion. The limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a, DC 5003. In the absence of limitation of motion, X-ray evidence of arthritis involving two or more major joints or two or more minor joint groups, will warrant a rating of 10 percent; in the absence of limitation of motion, X-ray evidence of arthritis involving two or more major joint groups with occasional incapacitating exacerbations will warrant a 20 percent rating. The above ratings are to be combined, not added under DC 5003. 38 C.F.R. § 4.71a, DC 5010, Note 1. 

In particular, disabilities of the shoulder and arm are to be rated under DCs 5200-5203. See 38 C.F.R. § 4.71a, DCs 5200-03. Normal ranges of upper extremity motion are defined by VA regulation as follows: forward elevation (flexion) from zero to 180 degrees; abduction from zero to 180 degrees; and internal and external rotation to 90 degrees.; additionally, lifting the arm to shoulder level is lifting it to 90 degrees. See 38 C.F.R. § 4.71a, Plate I. 

Handedness, for the purpose of a dominant (major) or non-dominant (minor) rating will be determined by the evidence of record, or by testing on VA examination; moreover, only one hand shall be considered dominant. 38 C.F.R. § 4.69 (2015). As discussed above, the Veteran is right-hand dominant; therefore, her left shoulder disability has been properly considered under the rating criteria for the minor, or non-dominant, extremity. 

DC 5200 provides rating criteria for ankylosis of scapulohumeral articulation, where the scapula and humerus move as one piece. See id., DC 5200. The relevant criteria indicate that favorable ankylosis is abduction to 60 degrees; while unfavorable ankylosis is abduction limited to 25 degrees. Id. A 20 percent disability rating is warranted for favorable ankylosis (abduction to 60 degrees) of the minor (non-dominant) side, where the mouth and head can be reached. Id. A 30 percent disability rating is warranted for intermediate ankylosis, between favorable and unfavorable (25 degrees abduction), of the minor (non-dominant) side. Id. A maximum 40 percent disability rating is warranted for unfavorable ankylosis of the non-dominant side, where abduction is limited to 25 degrees from the side. Id. 

Under DC 5201, a 20 percent disability rating is warranted for limitation of motion of the arm at shoulder level and midway between the side and shoulder level on the minor (non-dominant) side. See 38 C.F.R. § 4.71a, DC 5201. A maximum 30 percent disability rating is warranted for limitation of motion of the minor (non-dominant) arm to 25 degrees from the side. Id. 

DCs 5202 and 5203 contain rating criteria regarding other impairment of the humerus and impairment of the clavicle or scapula, respectively. See id., DCs 5202-03. 


II.C.1. Prior to July 26, 2011

The Veteran was first afforded a VA shoulder examination in March 2008. He reported bilateral shoulder pain when handling heavy weights over 30 pounds with his hands, or with overhead activities. He denied any specific injuries to the joints, prior injections or joint surgeries, use of assistive devices, restriction of his routine daily activities and usual duties of his occupation, or major incapacitating episodes. Upon physical examination, the examiner noted that the Veteran was right-handed. There was no swelling, tenderness, redness, warmth, or obvious deformities of either shoulder joint. The movements of both shoulder joints was slightly restricted, with abduction of 110 degrees, adduction of 30 degrees, forward elevation of 140 degrees, internal rotation of 40 degrees, and external rotation of 60 degrees, each without pain. There was no additional limitation of motion due to pain, weakness, fatigue, or lack of endurance after repetitive use. Muscle strength was normal, without atrophy. The examiner stated that the examination was essentially benign. X-rays of the shoulders showed degenerative changes at the glenohumeral joint. The examiner diagnosed bilateral shoulder tendonitis and sprain which were not likely preventing him from daily routine activities and light-duty jobs. 

May 2008 VA treatment records document a physical therapy evaluation wherein the Veteran reported bilateral shoulder pain which he believed may have resulted from using his upper extremities to compensate for his knee and foot weakness and pain. He reported his shoulder pain had decreased since he stopped working at Ford. Upon physical examination, his right shoulder flexion was to 165 degrees upon active motion and to 175 degrees upon passive motion; left shoulder flexion was to 147 degrees upon active motion and 160 degrees upon passive motion. Right shoulder scaption was to 163 degrees upon active motion and 170 degrees upon passive motion; left shoulder scaption was to 140 degrees upon active motion and 150 degrees upon passive motion. Right shoulder abduction was to 172 degrees upon active motion and 175 degrees upon passive motion; left shoulder abduction was to 130 degrees upon active motion and 145 degrees upon passive motion. Bilateral internal rotation was noted to T12; right external rotation was to T4, and left external rotation was to T2. Overall, the physical therapist noted the Veteran's decreased bilateral shoulder active range of motion and shoulder pain. He was instructed regarding an exercise program and to follow up as needed. 

In July 2008, the Veteran reported ongoing, unchanged bilateral shoulder pain. The physician noted his limited shoulder adduction, with otherwise normal range of motion. 

In his June 2009 VA Form 9 substantive appeal, the Veteran reported that his range of motion in his shoulders was more limited, while his shoulder strength was decreased. 

VA treatment records from July 2009 document his ongoing shoulder bilateral shoulder pain, which he described as dull, without radiation. He noted that his shoulder pain was constant, worse with physical activity, and improved by rest. He denied swelling, erythema, or warmth of the shoulder joints. Upon physical examination, there was no limitation of range of motion in the upper extremities. He displayed pain with palpation of the anterior acromioclavicular (AC) joint spaces bilaterally. The VA physician noted that the etiology of the Veteran's shoulder pain was unclear, but given a lack of inflammatory symptoms, it was not suspected to be secondary to a systemic process, such as rheumatoid arthritis. The Veteran was advised to lose weight loss, enrolled in the MOVE program, and referred for further physical therapy. 

Based upon the evidence as discussed above, and resolving reasonable doubt in favor of the Veteran, the Board concludes that 10 percent initial disability ratings are warranted for the Veteran's bilateral shoulder disabilities based upon x-ray evidence of degenerative changes in both shoulders. 38 C.F.R. § 4.71a, DC 5003. However, the preponderance of the evidence is against an increased disability rating in excess of 10 percent prior to July 26, 2011. In order to warrant an increased 20 percent disability rating under DC 5003, the evidence of record would have to contain x-ray evidence of arthritis involving two or more major joint groups with occasional incapacitating exacerbations. Id. Notably, each shoulder is considered one major joint; however, there is no evidence of incapacitating episodes requiring treatment and bed rest prescribed by a physician prior to July 26, 2011. 

The Veteran's statements of his observable symptoms, including bilateral shoulder pain and resulting functional effects, including limited range of motion, are probative evidence; however, his lay statements are outweighed by the objective and detailed range of motion findings as measured by VA physicians. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). 

The Board has also considered whether another potentially applicable diagnostic code would warrant an increased disability rating at any time during the period prior to July 26, 2011. See Schafrath, 1 Vet. App. at 595. 

In particular, disabilities of the shoulder and arm are to be rated under DCs 5200-5203. See 38 C.F.R. § 4.71a, DCs 5200-03. Normal ranges of upper extremity motion are defined by VA regulation as follows: forward elevation (flexion) from zero to 180 degrees; abduction from zero to 180 degrees; and internal and external rotation to 90 degrees.; additionally, lifting the arm to shoulder level is lifting it to 90 degrees. See 38 C.F.R. § 4.71a, Plate I. 

DC 5200 provides rating criteria for ankylosis of scapulohumeral articulation, where the scapula and humerus move as one piece. See id., DC 5200. The relevant criteria indicate that favorable ankylosis is abduction to 60 degrees; while unfavorable ankylosis is abduction limited to 25 degrees. Id. A 20 percent disability rating is warranted for favorable ankylosis (abduction to 60 degrees) of the minor (non-dominant) side, where the mouth and head can be reached. Id. A 30 percent disability rating is warranted for intermediate ankylosis, between favorable and unfavorable (25 degrees abduction), of the minor (non-dominant) side. Id. A maximum 40 percent disability rating is warranted for unfavorable ankylosis of the non-dominant side, where abduction is limited to 25 degrees from the side. Id. 

Under DC 5201, a 20 percent disability rating is warranted for limitation of motion of the arm at shoulder level and midway between the side and shoulder level on the minor (non-dominant) side. See 38 C.F.R. § 4.71a, DC 5201. A maximum 30 percent disability rating is warranted for limitation of motion of the minor (non-dominant) arm to 25 degrees from the side. Id. 

DCs 5202 and 5203 contain rating criteria regarding other impairment of the humerus and impairment of the clavicle or scapula, respectively. See id., DCs 5202-03. 

However, the Board finds that the above diagnostic codes do not warrant increased disability ratings in excess of 10 percent for the Veteran's bilateral shoulder disabilities prior to July 26, 2011. As discussed above, neither the July 2010 or March 2014 VA examinations document compensable limitation of motion or ankylosis of the shoulder; moreover, there was no noted compensable impairment of the humerus, clavicle, or scapula. Therefore, consideration of DCs 5200-5203 does not warrant increased disability ratings for the Veteran's bilateral shoulder disabilities prior to July 26, 2011. 

The Board has carefully considered the lay and medical evidence of record, and after resolving any reasonable doubt in favor of the Veteran, finds that 10 percent initial disability ratings are warranted for the Veteran's bilateral shoulder disabilities based upon x-ray evidence of degenerative changes in both shoulders prior to July 26, 2011. 38 C.F.R. § 4.71a, DC 5003. To that extent only, the claims are granted; however, the preponderance of the evidence is against increased disability ratings in excess of 10 percent prior to July 26, 2011. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3 (2015); Gilbert, supra. 


II.C.2. From July 26, 2011

The Veteran was next afforded a VA shoulder examination in July 2011. He complained of worsening bilateral shoulder pain which increased with attempted motion and resulted in occasional stiffness in the shoulder joints. He stated that his activities of daily living and work were both affected. He denied any instability and reported treatment by stretching exercises and pain medication. Physical examination revealed symmetrical shoulders, without deformity or swelling, and some tenderness anteriorly. Range of motion revealed abduction to 120 degrees with pain, forward flexion to 90 degrees with pain, external rotation and internal rotation each to 70 degrees with pain. There was no evidence of instability upon movements. X-ray studies revealed humeral arthritis mainly at the inferior aspect of the joints. The examiner diagnosed glenohumeral arthritis of both shoulders with limited motion and pain and without instability. There was no evidence of weakness, excess fatigability, or incoordination; however, additional functional loss of 15 degrees in abduction of both shoulders could be expected due to pain, fatigue, weakness, or lack of endurance on repetitive use of his shoulders. The examiner identified the overall level of impairment of function of both shoulders as moderate. 

Thereafter, the Veteran was afforded an additional VA shoulder examination in July 2013. He reported increasing pain and additional limitation of motion of the shoulders since the July 2011 VA examination. He stated that activities of daily living and work were both limited, and reported flare ups with lifting and carrying. Range of motion findings were documented as bilateral flexion to 90 degrees (with pain at 70 degrees) and bilateral abduction to 100 degrees (with pain at 80 degrees), with no additional loss of in range of motion upon repetition. Bilateral functional loss/impairment was identified as less movement than normal, excess fatigability, and pain on movement. There was no pain/tenderness or guarding and normal muscle strength without ankylosis. There was no history of mechanical symptoms, no AC joint condition, no joint replacement, and no related scars. Diagnostic testing showed bilateral degenerative arthritis, and the examiner diagnosed worsening degenerative arthritis bilaterally which resulted in significant effects on the Veteran's usual occupation, including problems with lifting and carrying, difficulty reaching, and pain, which had resulted in the assignment of different work duties. 

The Veteran was most recently afforded a VA shoulder examination in September 2015. The Veteran reported increasing pain and more limitation of the motion of both shoulders since the July 2013 VA examination. He noted fatigue with physical activities and limiting effects on his activities of daily living and his work. He denied any related surgery or use of assistive devices. Flare ups were reported as difficulty with lifting and carrying weights, and raising or working with the arm elevated. Range of motion findings were documented as abnormal bilateral shoulder flexion to 100 degrees, abduction to 90 degrees, external rotation to 60 degrees, and internal rotation to 50 degrees. The examiner noted that pain upon range of motion resulted in functional loss. While there was no additional loss in range of motion upon repetition, the examiner did note that pain and fatigability would result in a loss of range of motion during flare ups and/or over a period of time and estimated that range of motion figures as flexion to 90 degrees, abduction to 80 degrees, external rotation to 50 degrees, and internal rotation to 50 degrees. There was no objective evidence of localized tenderness/pain to palpation or objective evidence of crepitus. There was no muscle atrophy or ankylosis, no instability, dislocation, or labral pathology. There was no clavicle, scapula, AC joint, or sternoclavicular joint condition, and no loss of head (flail shoulder), nonunion (false flail shoulder), or fibrous union of the humerus. Diagnostic tests documented degenerative arthritis bilaterally. The examiner diagnosed bilateral degenerative arthritis with significant functional impact on occupational activities (including problems with lifting and carrying, and pain with overhead work) and mild to moderate effects on daily activities. 

Based upon the evidence as discussed above, the Board concludes that the preponderance of evidence weighs against the Veteran's claims of increased disability ratings in excess of 20 percent for his bilateral shoulder disabilities from July 26, 2011. 

Initially, the Board notes that a 20 percent disability rating is the highest warranted pursuant to DC 5003 for degenerative arthritis; therefore, consideration of DC 5003 could not lead to increased disability ratings for the Veteran's bilateral shoulder disabilities in excess of 20 percent from July 26, 2011. 

However, the Board has also considered whether another potentially applicable diagnostic code would warrant an increased disability rating during the period from July 26, 2011. See Schafrath, 1 Vet. App. at 595. 

Under DC 5201, a 20 percent disability rating is warranted for limitation of motion of the arm at shoulder level and midway between the side and shoulder level on the minor (non-dominant) side. See 38 C.F.R. § 4.71a, DC 5201. A 30 percent disability rating is warranted for limitation of motion of the major (dominant) arm limited midway between the side and the shoulder level. Id. A 30 percent disability rating is warranted for limitation of motion of the minor (non-dominant) arm limited to 25 degrees from the side, while a 40 percent disability rating is warranted for limitation of motion of the major (dominant) arm limited to 25 degrees from the side. Id. 

DCs 5202 and 5203 contain rating criteria regarding other impairment of the humerus and impairment of the clavicle or scapula, respectively. See id., DCs 5202-03. 

However, the Board finds that the above diagnostic codes do not warrant increased disability ratings in excess of 20 percent for the Veteran's bilateral shoulder disabilities at any time from July 26, 2011. As discussed above, none of the VA examinations from July 26, 2011 document the requisite limitation of motion or ankylosis of the shoulder; moreover, there was no noted compensable impairment of the humerus, clavicle, or scapula. Therefore, consideration of DCs 5200-5203 does not warrant increased disability ratings in excess of 20 percent for the Veteran's bilateral shoulder disabilities from July 26, 2011. 

As above, the Veteran's statements of his observable symptoms, including bilateral shoulder pain and resulting functional effects, including limited range of motion, are probative evidence; however, his lay statements are outweighed by the objective and detailed range of motion findings as measured by VA physicians. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). 

In sum, the Board finds that the preponderance of the evidence is against increased disability ratings in excess of 20 percent for bilateral shoulder disabilities from July 26, 2011. There is no reasonable doubt to be resolved, and the claim must be denied. 38 U.S.C.A. § 5107; 38 C.F.R. §§ 3.102, 4.3; Gilbert, supra. 


III. Extraschedular/TDIU Consideration

The Board has also considered whether referral for consideration of an extraschedular rating is warranted, noting that if an exceptional case arises where ratings based on the statutory schedules are found to be inadequate, consideration of an extraschedular evaluation commensurate with the average earning capacity impairment due exclusively to the service-connected disability or disabilities will be made. 38 C.F.R. § 3.321(b)(1) (2014). The determination of whether a claimant is entitled to an extraschedular rating under § 3.321(b) is a three-step inquiry. Thun v. Peake, 22 Vet. App. 111 (2008). 

The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. This means that initially there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. If the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is adequate, and no referral is required. 

If the criteria do not reasonably describe the claimant's disability level and symptomatology, a determination must be made whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. § 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). See id. 

In this case, the lay and medical evidence fails to show unique or unusual symptomatology regarding the Veteran's bilateral foot, bilateral knee, or bilateral shoulder disabilities that would render the schedular criteria inadequate. The Veteran's symptoms, as discussed above, are contemplated in the disability ratings assigned; thus, the application of the Rating Schedule is not rendered impractical. Moreover, the Veteran has not argued that his symptoms are not contemplated by the rating criteria; rather, he has merely disagreed with the assigned disability ratings for his level of impairment. In other words, he did not have any symptoms from his service-connected disabilities that are unusual or different from those contemplated by the schedular criteria. Nor has he alleged or indicated that the collective impact or combined effect of more than one service-connected disability presents an exceptional or unusual disability picture to render inadequate the schedular rating criteria. See Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). Accordingly, referral for consideration of an extraschedular rating is not warranted, as the manifestations of the Veteran's disabilities are considered by the schedular ratings assigned. Based on the foregoing, the Board finds the schedular evaluation is adequate, and referral is not required. 38 C.F.R. § 3.321; Thun, 22 Vet. App. 111. 

Finally, a claim for entitlement to a total rating based on individual unemployability due to service-connected disability (TDIU) is part of an increased rating issue when such claim is raised by the Veteran or reasonably raised by the record. Rice v. Shinseki, 22 Vet. App. 447 (2009). While both the Veteran and VA examiners have documented functional impact upon his ability to work due to his bilateral feet, knee, and shoulder disabilities, there is no probative evidence that such disabilities completely preclude his ability to secure and follow a substantially gainful occupation. As such, the Board finds that the issue of entitlement to a TDIU is not raised by the record. Id. 


ORDER

A 10 percent initial disability rating for bilateral plantar fasciitis, but no higher, is granted for the entire period on appeal. 

A 10 percent initial disability rating for patellofemoral syndrome of the right knee is granted for the entire period on appeal. 

A 10 percent initial disability rating for patellofemoral syndrome of the left knee is granted for the entire period on appeal. 

A 10 percent initial disability rating for a right (major) shoulder disability is granted prior to July 26, 2011; however, an increased disability rating in excess of 20 percent thereafter is denied. 

A 10 percent initial disability rating for a left (minor) shoulder disability is granted prior to July 26, 2011; however, an increased disability rating in excess of 20 percent thereafter is denied. 



____________________________________________
M. TENNER
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs